UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VINCENT PHILLIPS,

        Plaintiff,

v.

THE BANK OF NEW YORK MELLON,
AS TRUSTEE FOR THE BEAR STEARNS
ASSET BACKED SECURITIES TRUST 2002-2,
ASSET BACKED CERTIFICATES,
SERIES 2002-2,

        Defendant.

Civil Action No. 1:20-CV-968 (ABJ)

**MEMORANDUM OPINION**

    This matter is before the Court on defendant's motion to dismiss the complaint (ECF No. 6). For the reasons discussed below, the motion will be GRANTED.

**I. FACTUAL BACKGROUND**

    Vincent Phillips ("plaintiff") is the owner of real property in the District of Columbia at 427 Mellon Street, S.E., Washington, DC 20032 ("the Property"). Verified Complaint (ECF No. 1, "Compl.") ¶ 7. The complaint does not identify the lender or mortgagee that was involved when he purchased the Property.

    Plaintiff describes defendant, The Bank of New York Mellon as Trustee for the Bear Stearns Asset Backed Securities Trust 2002-2, Asset Backed Certificates, Series 2002-2 ("defendant") as "a diversified financial marketing and/or services corporation[] engaged primarily in residential mortgage banking and/or related businesses." Compl. ¶ 7. He alleges that defendant pooled mortgages including the mortgage on the Property, securitized these pools of

1

mortgages, and sold these mortgage-backed securities to investors. *See id.* ¶ 9. He further alleges that defendant engaged in these activities without having "follow[ed] the basic requirements for the transfer of . . . negotiable instrument[s] and . . . interest[s] in real property." *Id.* ¶ 10.

According to plaintiff, "no interest in the Mortgage Note, Deed of Trust or Property was ever legally transferred to . . . [d]efendant." *Id.* ¶ 11. Nevertheless, on November 19, 2015, defendant filed suit in the Superior Court of the District of Columbia ("Foreclosure Action") to foreclose on the Property. *See id.* ¶ 12; *see generally* Def.'s Mem., Ex. 2 (Docket, *The Bank of New York Mellon v. Phillips*, No. 2015 CA 009003 R(RP) (D.C. Super. Ct. Nov. 19, 2015)).[1] In its motion to dismiss, defendant represents that it holds the first priority mortgage on the Property. Mem. of P. & A. in Support of Def.'s Mot. to Dismiss Compl. (ECF No. 6-1, "Def.'s Mem.") at 1.

On August 31, 2018, the Superior Court issued an Order granting defendant's motion for default judgment, and the Property was sold to a third party at auction on July 18, 2019. *See* Def.'s Mem., Ex. 2 at 5; *see id.*, Ex. 3 (Order Granting Plaintiff's Motion for Default Judgment and Decree for Sale of Real Property, *The Bank of New York Mellon v. Phillips*, No. 2015 CA 009003 R(RP) (D.C. Super. Ct. Aug. 31, 2018)). On April 9, 2020, the Superior Court ratified the foreclosure sale. *See id.*, Ex. 4 (Order Granting Motion to Ratify Foreclosure Sale and Granting in Part Consent Motion to Intervene As Of Right for the Limited Purpose of Making a Claim to

---

[1] The complaint attached as Exhibit 1 to defendant's motion appears to be that of Wells Fargo Bank, N.A. *See generally* Def.'s Mem., Ex. 1 (Complaint for Judicial Foreclosure Sale, *Wells Fargo Bank, N.A. v. Phillips*, No. 2018 CA 000553 R (RP) (D.C. Super. Ct. Jan. 23, 2018)); *see id.*, Ex. 2 at 6-7. Wells Fargo had extended a Business Equity Line of Credit to plaintiff secured by a Deed of Trust on the Property, and later intervened in the Foreclosure Action for the purpose of claiming any surplus funds from the foreclosure sale. *See id.*, Ex. 4 (Order Granting Motion to Ratify Foreclosure Sale and Granting in Part Consent Motion to Intervene As Of Right for the Limited Purpose of Making a Claim to Surplus Proceeds, *The Bank of New York Mellon v. Phillips*, No. 2015 CA 009003 R(RP) (D.C. Super. Ct. Apr. 9, 2020)) at 8-9.

Surplus Proceeds, *The Bank of New York Mellon v. Phillips*, No. 2015 CA 009003 R(RP) (D.C. Super. Ct. Apr. 9, 2020)). Plaintiff timely filed an appeal. *See generally id.*, Ex. 5 (Notice of Appeal, *The Bank of New York Mellon v. Phillips*, No. 2015 CA 009003 R(RP) (D.C. Super. Ct. Apr. 25, 2020)).

The District of Columbia Court of Appeals dismissed the appeal on October 7, 2020, *see id.*, Ex. 6 (Order, *Phillips v. Bank of New York Mellon*, No. 20-CV-432 (D.C. Ct. App. Oct. 7, 2020)), because plaintiff had not filed a statement regarding transcripts. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss Compl. (ECF No. 8, "Pl.'s Opp'n") ¶ 2. The appeal since has been reinstated. *See id.*[2]

Plaintiff filed this lawsuit on April 9, 2020, and he brings three causes of action: wrongful foreclosure, violations of the Fair Debt Collection Practices Act ("FDCPA"), *see* 15 U.S.C. § 1692 *et seq.*, and negligence. *See generally* Compl. ¶¶ 14-15, 19-20, 24-25. He demands monetary damages, *see generally id.* ¶¶ 16-17, 21-22, 25-26, and among other relief, plaintiff seeks an injunction "preventing [d]efendant . . . from collecting on the subject loan and from causing the Property to be sold, assigned or transferred to a third party." *Id.* at 7 (page number designated by CM/ECF) ¶ 3.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

A plaintiff need only provide a "short and plain statement of [his] claim showing that [he] is entitled to relief," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting

---

[2] The District of Columbia Court of Appeals granted plaintiff's motion to reinstate the appeal on January 25, 2021. *See Phillips v. Bank of New York Mellon*, No. 20-CV-432 (D.C. Ct. App. Jan. 25, 2021).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  The Court "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged."  *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (citation and internal quotation marks omitted); *see Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  While the Court must accept as true the facts alleged in the complaint, it "need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint."  *Kowal*, 16 F.3d at 1276.  The Court need not accept "a legal conclusion couched as a factual allegation," or "naked assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to state a claim either.  *Id*.

Although a *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson*, 551 U.S. at 94 (internal quotation marks and citation omitted), it still "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of [defendant's] misconduct,'" *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678-79); *see, e.g., Budik v. Dartmouth-Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C. 2013) ("However, even though a pro se complaint must be construed liberally, the complaint must still 'present a claim on which the Court can grant relief.'"), *aff'd*, No. 13-5121, 2013 WL 6222951 (D.C. Cir. Nov. 19, 2013).

The Court may take judicial notice of matters of public record, such as the Superior Court and Court of Appeals documents the parties have submitted or to which they refer, *see Covad Commc'ns Co. v. Bell Atlantic Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005), without converting defendant's motion to dismiss into a motion for summary judgment. *See Asnake v. Deutsche Bank Nat'l Tr. Co.*, 313 F. Supp. 3d 84, 86 (D.D.C. 2018).

### B. Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction," and the law presumes "that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002), *aff'd*, 409 F.3d 414 (D.C. Cir. 2005), *cert. denied*, 546 U.S. 1173 (2006). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). Subject matter jurisdiction may not be waived, and "courts may raise the issue *sua sponte*." *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008) (quoting *Athens Cmty. Hosp., Inc. v. Schweiker*, 686 F.2d 989, 992 (D.C. Cir. 1982)). Indeed, a federal court must raise the issue because it is "forbidden . . . from acting beyond [its] authority, and 'no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Id.* (quoting *Akinseye*, 339 F.3d at 971).

When reviewing a challenge pursuant to Rule 12(b)(1), the Court may consider documents outside the pleadings to assure itself that it has jurisdiction. *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (holding same). By considering documents outside the pleadings when reviewing a motion to dismiss pursuant to Rule 12(b)(1), the Court does not convert the motion into one for summary judgment. *See Haase*, 835 F.2d at 905 (noting that "the plain language of Rule 12(b) permits only a 12(b)(6) motion to be converted into a motion for summary judgment" when the Court considers documents extraneous to the pleadings).

## III. ANALYSIS[3]

### A. Res Judicata

Defendant argues that the claims plaintiff raises here are barred under the doctrine of res judicata. *See* Def.'s Mem. at 10-12.

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (footnote omitted). "[C]laim preclusion (sometimes itself called res judicata) . . . prevents parties from raising issues that could have been raised and decided in a prior action – even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020). "If a later suit advances the same claim as an earlier suit between the same parties, the earlier suit's judgment prevents litigation of all grounds for, or defenses to, recovery

---

[3] Defendant moved to dismiss under Federal Rule of Civil Procedure 12(b)(5) for lack of service of process. *See generally* Def.'s Mem. at 5-7. It asserts that the persons whom the United States Marshals Service attempted to serve, *see* Summons in a Civil Case (ECF Nos. 3, 5) were not authorized to accept service of process on defendant's behalf. *See id.* at 6; Reply ¶ 4. Notwithstanding its "belie[f] the Complaint should be dismissed for failure to properly serve the [d]efendant," it has withdrawn this argument. Reply ¶ 4.

that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Id.* (citations and internal quotation marks omitted); *see Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981) ("The parties to a suit and their privies are bound by a final judgment and may not relitigate any ground for relief which they already have had an opportunity to litigate – even if they chose not to exploit that opportunity – whether the initial judgment was erroneous or not."); *see also Ashbourne v. Hansberry*, 894 F.3d 298, 302 (D.C. Cir. 2018) (describing res judicata as "an ancient legal doctrine that, in simple terms, limits parties to one bite at the litigation apple"). No party can "escape application of the doctrine by raising a different legal theory or seeking a different remedy in the new action that was available to him in the prior action." *Thompson v. Washington Mut.*, 806 F. Supp. 2d 197, 200 (D.D.C. 2011) (citations omitted), *aff'd sub nom. Thompson v. Washington Mut., Inc.*, 482 F. App'x 595 (D.C. Cir. 2012).

"A subsequent lawsuit is barred by claim preclusion 'if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction.'" *Nat. Res. Def. Council v. EPA*, 513 F.3d 257, 260 (D.C. Cir. 2008) (quoting *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006)). Two suits are based on the same claim or cause of action if they "arise from the same transaction . . . or involve a common nucleus of operative facts." *Lucky Brand Dungarees*, 140 S. Ct. at 1595 (citations, internal quotation marks and brackets omitted). "In pursuing this inquiry, the court will consider whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Apotex, Inc.*

*v. Food & Drug Admin.*, 393 F.3d 210, 217 (D.C. Cir. 2004) (citations and internal quotation marks omitted).

As plaintiff put it in his own complaint, "this action arises out of a loan and foreclosure related activity to the Property," Compl. ¶ 8, which began in November 2015 when defendant initiated the Foreclosure Action in the Superior Court. *Id.* ¶ 12. Plaintiff expressly challenges defendant's right to foreclose, arguing that it has "no interest in the Mortgage Note, Deed of Trust or Property[.]" *Id.* ¶ 11.

Defendant contends that the Foreclosure Action involves the same parties and claims as those presented here, and that it culminated in a final judgment by the Superior Court in its favor. *See* Def.'s Mem. at 11. Thus, defendant argues, plaintiff's claims are barred under the doctrine of res judicata. *See id*. Further, defendant notes that plaintiff has already had an opportunity to litigate the legitimacy of the foreclosure sale and events leading to it, and therefore, plaintiff "should not be allowed another bite at the apple to re-litigate these issues." *Id*. at 12.[4]

Plaintiff responds that res judicata cannot bar his claims because the appeal before the District of Columbia Court of Appeals has not yet concluded. Pl.'s Opp'n ¶ 2. But plaintiff is incorrect as a matter of law, as the Superior Court's final ruling has preclusive effect notwithstanding an ongoing appeal before the District of Columbia Court of Appeals. *See Martin v. Malhoyt*, 830 F.2d 237, 264 (D.C. Cir. 1987) (noting that "[t]he pendency of an appeal . . . does not automatically diminish the preclusive effects of a prior adjudication").

It is undisputable that this action involves the same parties that were involved in the Foreclosure Action and that it arises from the same mortgage loan transaction and subsequent

---

[4] Plaintiff apparently raised no issues at all in the Foreclosure Action. The Superior Court noted that plaintiff had been served with process but did not answer the complaint or oppose defendant's motion for default judgment and decree for sale of the Property. *See* Def.'s Mem., Ex. 3 at 1.

foreclosure. And it is apparent that the Superior Court, a court of competent jurisdiction, has concluded the Foreclosure Action with a ruling in defendant's favor. Plaintiff's claim here that defendant had no authority to foreclose because it had not acquired an enforceable interest in the Property amounts to nothing more than an attempt to re-litigate claims the Superior Court already has resolved and the District of Columbia Court of Appeals is reviewing. Therefore, res judicata bars the first cause of action in the complaint, the wrongful foreclosure claim, completely.

Moreover, to the extent the second cause of action under the FDCPA is predicated on "the collection of a debt not owed to Defendant, . . . attempting to foreclose upon a void security interest, foreclosing upon a Note of which they were not in possession nor otherwise entitled to payment, [or] falsely stating the amount of the debt," Compl. ¶ 20, those allegations were litigated in the foreclosure action in Superior Court. Similarly, to the extent the negligence claim in the third cause of action is based on defendant's failure to maintain the original mortgage note, *id.* ¶ 24, or taking payments and charging fees to which it was not entitled, *id.* ¶ 25, defendant's entitlement to enforce the loan was also litigated in the foreclosure action. Plaintiff cannot avoid the effect of res judicata simply by re-casting his allegations as statutory or common law claims. This leaves only those portions of the second and third causes of action alleging that defendant made false or negative reports to credit agencies. *See id.* ¶¶ 20, 25. While the issues of the existence of the debt and the amount owed were necessarily litigated in the foreclosure action and therefore, there would be grounds to dismiss those issues and claims as precluded as well, there are additional reasons why these causes of action must be dismissed.

As set forth in section B of this opinion below, it is appropriate for the Court to decline to exercise jurisdiction as this dispute is already being appropriately litigated in the District of

Columbia courts, and as set forth in section C, the complaint does not state a plausible cause of action for wrongful foreclosure, under the FDCPA, or under principles of common law negligence.

### B. *Rooker-Feldman* Doctrine

To the extent plaintiff challenges the Superior Court's rulings in the Foreclosure Action, defendant moves to dismiss pursuant to the *Rooker-Feldman* doctrine, *see generally* Def.'s Mem. at 8-9, which "prevents lower federal courts from hearing cases that amount to the functional equivalent of an appeal from a state court." *Gray v. Poole*, 275 F.3d 1113, 1119 (D.C. Cir. 2002) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923)). The doctrine pertains to this Court's jurisdiction, *see Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 75 (D.C. Cir. 1997), and "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). If, however, "a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* at 293 (citations, internal quotation marks, brackets and ellipses omitted). "A claim is 'independent' from a state court judgment if it seeks redress for injuries that are not directly attributable to that judgment or if the 'core' of the claim is independent of the judgment." *Hunter v. United States Bank Nat'l Ass'n*, 698 F. Supp. 2d 94, 99 (D.D.C. 2010) (citing *Stanton*, 127 F.3d at 75-76) (additional citation omitted).

Defendant argues that "[p]laintiff raised no independent claim" in this action "and instead raises claims falling squarely within the confines of the [*Rooker-Feldman*] doctrine." Def.'s Mem.

at 9.  He "lost when the Superior Court entered the . . . Order" ratifying the foreclosure sale of the Property, and, defendant argues, this Court may not engage in the equivalent of appellate review of the Superior Court's decision.  *Id.*  Plaintiff responds that the *Rooker-Feldman* doctrine does not apply "because the federal issues raised were not put before the [District of Columbia] Court." Pl.'s Opp'n ¶ 3.  His opposition does not specify the "federal issues" involved, however.

If this Court were to rule in plaintiff's favor and to grant the relief he requests, particularly injunctive relief "preventing [d]efendant . . . from collecting on the subject loan and from causing the Property to be sold, assigned or transferred to a third party," Compl. at 7, this Court, in essence, would be reviewing and reversing a Superior Court decision.  This is exactly the type of judicial action the *Rooker-Feldman* doctrine was designed to prevent.  *See, e.g., Owens v. Bank of Am.*, No. 17-CV-2110, 2018 U.S. Dist. LEXIS 156710, at *27 (D.D.C. Sep. 13, 2018) (concluding that *Rooker-Feldman* doctrine bars claims brought by "the sole defendant in the Superior Court foreclosure case [who] lost when the Superior Court ratified the foreclosure sale" and who "seeks relief designed to invalidate the Superior Court's judgment"); *Glaviano v. JP Morgan Chase Bank, N.A.*, No. 13-CV-2049, 2013 U.S. Dist. LEXIS 180582, at *3 (D.D.C. Dec. 27, 2013) (invoking *Rooker-Feldman* abstention doctrine in declining "to hear what amounts to the Plaintiffs' challenge to decisions of California state courts" on foreclosure sale of property); *see also Harbison v. United States Senate Comm.*, 839 F. Supp. 2d 99, 110 (D.D.C. 2012) (concluding that claims "based on [plaintiff's] frustration at the Virginia state judiciary for their decisions during his divorce proceedings and his subsequent indictment for unlawful marriage and bigamy" are matters "[t]he Rooker-Feldman doctrine prevents this Court from reviewing").

Finally, the Court concludes that plaintiff has failed to state a claim for purposes of Rule 12(b)(6) in any event.

**C. Failure to State Claims Upon Which Relief Can Be Granted**

    **1. Wrongful Foreclosure**

Plaintiff cites a District of Columbia Code provision which identifies the persons entitled to enforce a security interest. *See* Compl. ¶ 14. His reference to "DC Commercial Code § 8.3A-301," *id.*, presumably is a reference to the following provision:

> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 28:3-309 or 28:3-418(d).

D.C. Code § 28:3-301. According to plaintiff, defendant is neither the holder, beneficiary nor assignee of the underlying Note, and, therefore, is not entitled to enforce it. Compl. ¶ 14. Nevertheless, plaintiff alleges, defendant "failed to suspend the [F]oreclosure [A]ction to allow [him] to be considered for alternative foreclosure prevention options." *Id.* ¶ 15. Plaintiff claims to have suffered monetary damages and emotional distress as a result. *Id.* ¶ 16.

"[A]n action for wrongful for improper foreclosure may lie where the property owner sustains damages by reason of a foreclosure executed in a manner contrary to law." *Johnson v. Fairfax Village Condo. IV Unit Owners Ass'n*, 641 A.2d 495, 505 (D.C. 1994). "To state a claim for wrongful foreclosure, the plaintiff must allege sufficient facts to state a plausible claim that he sustain[ed] damages by reason of a foreclosure executed in a manner contrary to law." *Tefera v. OneWest Bank, FSB*, 19 F. Supp. 3d 215, 222 (D.D.C. 2014) (citations and internal quotation marks omitted), *appeal dismissed*, No. 14-7039 (D.C. Cir. Sept. 16, 2015).

The Superior Court's Order Granting Plaintiff's Motion for Default Judgment and Decree for Sale of Real Property, *see* Def.'s Mem., Ex. 3 at 2, makes clear that the Foreclosure Action is a judicial foreclosure. Under District of Columbia law:

> [The Superior Court] shall have authority . . . to order and decree that said property be sold and the proceeds be brought into court to be applied to the payment of the debt secured by said mortgage; and if, upon a sale of the whole mortgaged property, the net proceeds shall be insufficient to pay the mortgage debt, the court may enter a decree in personam against the mortgagor or other party to the suit who is liable for the payment of the mortgage debt for the residue of said debt remaining unsatisfied after applying to said debt the proceeds of such sale[.]

D.C. Code § 42-816.

Missing from plaintiff's complaint are any factual allegations that judicial foreclosure of the Property and its sale to a third party, which the Superior Court already has ratified, occurred in a manner contrary to law. *See Jackson v. ASA Holdings, LLC*, 751 F. Supp. 2d 91, 101 (D.D.C. 2010) (concluding that, absent allegations that defendants violated some provision of District of Columbia law, "conclusory allegation that Defendants wrongfully foreclosed is totally inadequate to state a claim for wrongful foreclosure"). To the extent plaintiff can identify any legal flaws in the Foreclosure Action, that question properly is pending review by the District of Columbia Court of Appeals.

### 2. Fair Debt Collection Practices Act

The FDCPA "imposes civil liability on debt collectors for certain prohibited debt collection practices." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576 (2010) (brackets and internal quotation marks omitted). Generally, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. For example, a debt collector may not threaten violence, 15 U.S.C. § 1692d(1), use obscene language, 15 U.S.C. § 1692d(2), or "caus[e] a telephone to ring or engag[e] any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5).

The FDCPA defines the term "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "[C]reditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the [Fair Debt Collection Practices Act]." *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F. Supp. 2d 709, 718 (E.D. Va. 2003) (emphasis removed), *aff'd*, 67 F. App'x 238, 238 (4th Cir. 2003); *Avila v. CitiMortgage, Inc.*, 45 F. Supp. 3d 110, 120 (D.D.C. 2014) (concluding that plaintiffs' claims of improper debt collection practices pertaining to foreclosure on their residence "are not cognizable under . . . the [FDCPA] . . . because none of the defendants [is a] 'debt collector[]' as defined by" the FDCPA"). Defendant identifies itself as the holder of the first primary mortgage on the Property, *see* Def.'s Mem. at 1, suggesting that it is not a debt collector to which the FDCPA applies.

Still, defendant moves to dismiss on the specific ground that plaintiff's complaint fails to allege facts to support a claim under the FDCPA. *See* Def.'s Mem. at 12-13. It directs the Court's attention to the following paragraph of the complaint:

> It is an undisputed fact that Defendant's actions constitute a violation of the FDCPA in that they threatened to take actions not permitted by law, including but not limited to: collection on a debt not owed to Defendant, making false reports to credit reporting agencies, attempting to foreclose upon a void security interest, foreclosing upon a Note of which they were not in possession nor otherwise entitled to payment, falsely stating the amount of a debt, increasing the amount of a debt, increasing the amount of a debt by including amounts that are not permitted by law or contract, and using unfair and unconscionable means in an attempt to collect a debt.

Compl. ¶ 20. Defendant deems this language "nothing more than a list of general types of acts that if alleged could constitute violations of the FDCPA." Def.'s Mem. at 13. This "mere list of

14

the elements of a potential FDCPA claim . . . does not contain any facts specific to [plaintiff[], his mortgage loan, or the Property that would constitute a valid cause of action against the [d]efendant." *Id*.

Plaintiff responds that "[s]pecific acts not need to be pled under the statute pursuant to Federal Rule of Civil Procedure 9." Pl.'s Opp'n ¶ 7. The relevance of Federal Rule of Civil Procedure 9 in the context of this case is unclear. Plaintiff, for example, does not raise a fraud claim, which would require that he "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). Even applying a lenient pleading standard to a *pro se* complaint, plaintiff "must plead factual matter that permits the court to infer more than the mere possibility of [defendant's] misconduct." *Atherton*, 567 F.3d at 681-82 (citation and internal quotation marks omitted). The vague and conclusory assertions of this complaint fail to articulate an FDCPA claim against defendant, *see Rivera v. Rosenberg & Assocs., LLC*, 142 F. Supp. 3d 149, 159 (D.D.C. 2015) (finding that plaintiff failed to state plausible FDCPA claim where amended complaint failed to identify which specific provisions of the FDCPA on which claims were based), assuming that the FDCPA even applies here.

### 3. Negligence

Plaintiff alleges that defendant "breached its duty of care . . . when it failed to maintain the original Mortgage Note, failed to properly create original documents, and failed to make . . . required disclosures" to him. Compl. ¶ 24. In addition, plaintiff alleges further breaches when defendant accepted "payments to which [it was] not entitled, charged fees [it was] not entitled to charge, and made or otherwise authorized negative reporting of [p]laintiff's creditworthiness to various credit bureaus wrongfully." *Id.* ¶ 25. Consequently, plaintiff alleges, he "suffered and continues to suffer harm" for which he is entitled to damages. *Id.* ¶ 26.

Defendant argues that the complaint fails to state a negligence claim for two reasons. *See generally* Def.'s Mem. at 14-16. It posits that the relationship between a debtor and creditor ordinarily is a contractual relationship. *See id.* at 15. Because plaintiff's negligence claim cannot stand independently as if there were no contractual relationship, the negligence claim must be dismissed. *See id.* at 14. Second, defendant argues that it owed no duty of care to plaintiff, given the ordinary contractual relationship between the parties. *See id.* at 15. Plaintiff does not address these arguments in his opposition.

"To establish a negligence claim, a plaintiff must show '(1) a duty, owed by the defendant to the plaintiff, to conform to a certain standard of care; (2) a breach of this duty by the defendant; and (3) an injury to the plaintiff proximately caused by the defendant's breach.'" *Findlay v. CitiMortgage, Inc.*, 813 F. Supp. 2d 108, 120 (D.D.C. 2011) (quoting *District of Columbia v. Fowler*, 497 A.2d 456, 463 n.13 (D.C. 1985)). The tort of negligence must stand on its own, "independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship," *Carter v. Bank of Am., N.A.*, 888 F. Supp. 2d 1, 15 (D.D.C. 2012) (citations omitted), and "[t]he relationship between a debtor and creditor is ordinarily a contractual one, lacking any fiduciary duties." *Findlay*, 813 F. Supp. 2d at 120 (citing *Geiger v. Crestar Bank*, 778 A.2d 1085, 1091 (D.C. 2001)). However, if there are alleged to be assurances or promises beyond the written contractual agreements, a defendant might be held liable for negligence. *See id.* (referring to case law supporting "the proposition that a lender undertakes a duty to a borrower when its employees make certain assurances to the borrower during the loan negotiation process"). No such circumstances are alleged here, so the complaint fails to state a negligence claim. Moreover, plaintiff's negligence claim – defendant negligently enforced a mortgage without the authority to do so – is in essence the same as his wrongful

16

foreclosure claim, and that claim, as noted above, is barred by res judicata and is the subject of proceedings before the District of Columbia courts to which this Court should defer.

### 4. TILA and RESPA

In his complaint, plaintiff mentions the Truth in Lending Act ("TILA"), *see* 15 U.S.C. § 1601 *et seq*., and the Real Estate Settlement Procedures Act ("RESPA"), *see* 12 U.S.C. § 2601, *et seq*. in passing, *see* Compl. ¶ 1. He also mentions Regulation Z, *see* 12 C.F.R. part 226, described as TILA's implementing regulation, *see Bopp v. Wells Fargo Bank, N.A.*, 740 F. Supp. 2d 12, 14 (D.D.C. 2010). If it is plaintiff's intention to predicate additional claims on these sources, those claims also fail.

Generally, TILA requires "accurate and meaningful disclosure of material terms to consumers in credit transactions." *Solomon v. Falcone*, 791 F. Supp. 2d 184, 188 (D.D.C. 2011) (citing 15 U.S.C. § 1601). "Material terms" include "the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and [other] disclosures[.]" 15 U.S.C. § 1602(v).

"To state a claim under TILA, a plaintiff must show either that [he] did not receive the required disclosures or that the disclosures provided were not clear and conspicuous." *Thompson v. HSBC Bank USA, N.A.*, 850 F. Supp. 2d 269, 276 (D.D.C. 2012) (internal quotation marks and citations omitted). There are no such allegations in the complaint, and plaintiff's TILA claim must fail. *See Travers v. Wells Fargo Bank*, No. 09-CV-1061, 2010 U.S. Dist. LEXIS 162843, at *4 (D.D.C. May 5, 2010) (dismissing TILA claim where plaintiff "does not offer a single citation to

TILA or Regulation Z," and offers no "specifics on how the disclosures were incomplete, misleading, or difficult to understand").

RESPA is designed "to insure that consumers . . . are provided with greater and more timely information on the nature and costs of the [real estate] settlement process" and to protect them "from unnecessarily high settlement charges caused by certain abusive practices." *Peek v. Suntrust Bank, Inc.*, No. 19-CV-0658, 2020 U.S. Dist. LEXIS 52270, at *7-8 (D.D.C. Mar. 24, 2020) (citing 12 U.S.C. § 2601(a)). The complaint is devoid of allegations to support a RESPA claim. A bare allegation that a defendant breached its duties under RESPA "is not enough," as "[a] plaintiff must, at a minimum, allege that the breach resulted in actual damages." *Conant v. Wells Fargo Bank, N.A.*, 60 F. Supp. 3d 99, 115 (D.D.C. 2014) (citing *Banh v. Aurora Loan Servs., LLC*, No. 11-CV-6365, 2012 U.S. Dist. LEXIS 82775, at *3 (N.D. Cal. June 14, 2012)).

## IV. CONCLUSION

The Court concludes that the doctrine of res judicata bars plaintiff's claims, and even if the claims were not barred, the Court declines to entertain them under the *Rooker-Feldman* doctrine. In addition, the Court concludes that the complaint fails to state claims of wrongful foreclosure, negligence, or violations of FDCPA, TILA, or RESPA. Accordingly, defendant's motion to dismiss will be granted. An Order is issued separately.

DATE: September 15, 2021           /s/
                                   AMY BERMAN JACKSON
                                   United States District Judge